550 A.2d 1346

**Josephine J. ROACH and Thomas Roach, her husband, Appellants,**

v.

**PORT AUTHORITY OF ALLEGHENY COUNTY and State Farm Insurance Companies.**

Superior Court of Pennsylvania.

Argued June 30,

Filed Nov. 29, 1988.

John M. Silvestri, Pittsburgh, for appellants.

Frank M. Gianola, Pittsburgh, for appellees.

Before BROSKY, JOHNSON and MELINSON, JJ.

MELINSON, Judge:

This is an appeal from an Order of the Court of Common Pleas of Allegheny County granting, without Leave to Appellant to Amend, the Appellee's (State Farm Insurance Companies') preliminary objection in the nature of a demurrer.

Appellants, Josephine J. Roach and Thomas Roach, her husband, filed a two-count Complaint which named the Port Authority of Allegheny County (hereinafter "PAT") and State Farm Insurance Companies (hereinafter "State Farm") as Defendants.

To determine whether a preliminary objection in the nature of a demurrer was properly granted, this Court must accept as true all properly pleaded material facts, and reasonable inferences therefrom, set forth by the opposing party. *Stein v. Richardson,* 302 Pa.Super. 124, 448 A.2d 558 (1982); *Sun Oil Co. Of Pennsylvania v. Bellone,* 292 Pa.Super. 341, 437 A.2d 415 (1981), *citing Trost v. Clover,* 234 Pa.Super. 255, 338 A.2d 630 (1975). We must confine our analysis to the complaint and decide whether there have been pleaded sufficient facts to permit recovery if said facts are ultimately proven. *Gordon v. Lancaster Osteopathic Hospital Association,* Inc., 340 Pa.Super. 253, 489 A.2d 1364 (1985).

■ In addition, leave to amend a complaint lies within the discretion of the trial court unless the amended pleading has been filed within ten days of the filing of the preliminary objections. Pa.R.Civ.P. 1028(c), 42 Pa.Cons.Stat.Ann. *Division 85 of Amalgamated Transit Union v. Port Authority of Allegheny County,* 71 Pa.Cmwlth. 600, 455 A.2d 1265 (1983). Also, the right to amend the pleadings should not be withheld where some reasonable possibility exists that ·the amendment can be accomplished successfully. *Post v. Mendel,* 510 Pa. 213, 507 A.2d 351 (1986); *Otto v. American Mutual Insurance Co.,* 482 Pa. 202, 205, 393 A.2d 450, 451 (1978); *Division 85 of Amalgamated Transit Union,* 455 A.2d at 1267. However, "the decision to grant or deny leave to amend is within the sound discretion of the trial court, and will not be reversed absent a clear abuse of discretion." *Feingold v. Hill,* 360 Pa.Super. 539, 550, 521 A.2d 33, 39 (1987), *citing Junk v. East End Fire Department,* 262 Pa.Super. 473, 490, 396 A.2d 1269, 1277 (1978). Leave to amend will be withheld where the initial pleadings reveal that the *prima facie* elements of the claim cannot be established and that the complaint's defects are so substantial that amendment is not likely to cure them. *Feingold,* 360 Pa.Super. at 550, 521 A.2d at 39, *citing Spain v. Vicente,* 315 Pa.Super. 135, 142–43, 461 A.2d 833, 837 (1983).

The pleadings reveal the following facts: On March 18, 1987, Josephine Roach (hereinafter "Mrs. Roach"), was a passenger on a bus owned and operated by PAT. While she was riding on the bus, Roach was injured as a result of a fight which took place between two other PAT bus passengers. The Roaches alleged in the first count that PAT was negligent in allowing the two people who were fighting to enter the bus, and in not preventing the fight which caused Mrs. Roach's injuries. In this appeal, we are not asked to determine the rights of the Roaches against PAT with respect to the liability of PAT for their alleged negligence; therefore, we shall not address this issue.

In the second count, the Roaches alleged that State Farm was unreasonable in denying an insurance claim for reimbursement of medical bills incurred by the Roaches due to the injuries sustained by Mrs. Roach. Mrs. Roach was insured under an automobile insurance policy issued by State Farm. As a result of her injuries, Mrs. Roach filed a claim with State Farm under her policy. State Farm denied her claim contending that the injuries sustained by her did not arise out of "the maintenance or use of a motor vehicle" as is required for payment of first party benefits under both the insurance policy[1] issued to Mr. Roach and the Pennsylvania Motor Vehicle Financial Responsibility Law.[2]

After denial of Mrs. Roach's claim, the Roaches filed suit in the court below naming both PAT and State Farm as

---

1. The State Farm Policy provides in pertinent part:
   SECTION II—FIRST PARTY COVERAGES
   MEDICAL PAYMENTS—COVERAGE C

        ·     ·     ·     ·     ·

   What We Pay
   We will pay for bodily injury to an insured arising out of the maintenance or use of a motor vehicle....
   (Appellant's Insurance Policy at 8–9.) (emphasis added)

2. Pa.Cons.Stat.Ann. tit. 75, §§ 1701–1798 (Purdon 1987 Supp.) Section 1711 provides in pertinent part:
   Section 1711. Required Benefits
      An insurer issuing or delivering liability insurance policies covering any motor vehicle ... shall include coverage providing a medical benefit ... with respect to injury arising out of the maintenance or use of a motor vehicle.... (emphasis added)

defendants. Subsequently, State Farm filed preliminary objections in the nature of a demurrer and misjoinder of a cause of action. State Farm admitted all the properly pleaded facts in filing its preliminary objection. However, State Farm denied that the injuries sustained by Mrs. Roach were a result of the maintenance or use of a motor vehicle within the meaning of the Pennsylvania Motor Vehicle Financial Responsibility Law. Further, State Farm contends that it rightfully denied Mrs. Roach's claim; therefore, the Roaches failed to state a cause of action against State Farm upon which relief may be granted.

The learned trial judge, the Honorable Bernard L. McGinley, granted State Farm's preliminary objection in the nature of a demurrer without leave to Mrs. Roach to amend. It is from that Order that Appellants filed this timely appeal.

This case presents us with the issue of whether a public transportation passenger who is injured as the result of a fight between two other passengers, sustained injuries arising out of the maintenance and use of a motor vehicle. This court recently examined the definition of "maintenance and use of a motor vehicle," as used in the Pennsylvania Motor Vehicle Financial Responsibility Law, in the case of *Alvarino v. Allstate Insurance Company,* 370 Pa.Super. 563, 537 A.2d 18 (1988). There, the court held that injuries caused as a result of a dog's biting a passenger in a van did not arise from the use of the van and, therefore, did not have to be within the coverage of the motor vehicle policy covering the van pursuant to the Pennsylvania Motor Vehicle Financial Responsibility Law. The court further stated that "the mere fact that a motor vehicle is the place where injuries are sustained is insufficient to establish a causal connection between the use of the vehicle and the injuries so as to require payment of first party benefits." *Alvarino,* 370 Pa.Superior Ct. at 568, 537 A.2d at 21. In the instant case, Roach was injured as a result of a fight between two other bus passengers. The bus was merely the place in which the

injuries occurred; therefore, the trial court properly sustained State Farm's preliminary objection.

In order to interpret a statute of this Commonwealth we must observe the rules set forth in Chapter 19 of Title 1 Pa.Cons.Stat.Ann.[3] and construe the words of the statute according to their plain meaning, *Commonwealth v. Sojourner*, 513 Pa. 36, 518 A.2d 1145 (1986); *Commonwealth v. Stanley*, 498 Pa. 326, 446 A.2d 583 (1982). Furthermore, the object of all interpretation of statutes is to ascertain and effectuate the legislative intent. 1 Pa.Cons.Stat.Ann. § 1921. When the words are not explicit such intent may be determined by considering, among other matters, "the former law, if any, including other statutes upon the same or similar subjects." Pa.Cons.Stat.Ann. tit. 1, § 1921(c)(5).

The General Assembly of this Commonwealth enacted the Pennsylvania Motor Vehicle Financial Responsibility Law on February 12, 1984, repealing the Pennsylvania No–Fault Motor Vehicle Insurance Act[4] (hereinafter "No–Fault Act"). Under the No–Fault Act, the victim of an injury-producing accident which occurred in this Commonwealth was entitled to receive basic loss benefits.[5] "It is clear that the No–Fault Act was never intended to be a general liability insurance which would cover all injuries, no matter how remotely connected with the use or maintenance of a motor vehicle, but [was] intended to cover most motor vehicle accidents." *Glad v. State Farm Mutual Insurance Company*, 336 Pa.Super. 196, 200, 485 A.2d 499, 501 (1984), *quoting Camacho v. Nationwide Insurance Co.*, 314 Pa. Super. 21, at 23, 460 A.2d 353, at 354 (1983).

**3.** Pa.Cons.Stat.Ann. Section 1903(a) provides in pertinent part Section 1903. Words and phrases
(a) Words and phrases shall be construed according to rules of grammar and according to their common and approved usage; but ... such others as have acquired a peculiar and appropriate meaning ... shall be construed according to such peculiar and appropriate meaning or definition.

**4.** Pa.Cons.Stat.Ann. tit 40 § 1009.101 *et seq.* Repealed. 1984, Feb. 12, P.L. 26, No. 11, Section 8(a), effective Oct. 1, 1984.

**5.** *Id.* at Section 1009.201(a)

The No–Fault Act defined a "victim" as "an individual who suffers injury arising out of the maintenance or use of a motor vehicle ..." Under the Act "maintenance or use of a motor vehicle" meant "maintenance or use of a motor vehicle as a vehicle, including, incident to its maintenance or use as a vehicle, occupying, entering into, or alighting from it." Pa.Cons.Stat.Ann. tit. 40, § 1009.103. Repealed. 1984, Feb. 12, P.L. 26, No. 11, Section 8(a), effective Oct. 1, 1984. *See also, Schweitzer v. Aetna Life and Casualty Co.*, 306 Pa.Super. 300, 452 A.2d 735 (1982).

Furthermore, we have consistently distinguished between those injuries that the legislature intended to be compensated exclusively by No–Fault, and those that were to be left to other remedies, by requiring a causal connection between the injury and the "maintenance and use of a motor vehicle." *Cerrato v. Holy Redeemer Hospital*, 342 Pa.Super. 551, 555, 493 A.2d 728, 730 (1985); *Crawford v. Allstate Insurance Co.*, 305 Pa.Super. 167, 451 A.2d 474 (1982); *compare, Glad*, 336 Pa.Super. 196, 485 A.2d 499 (1984) (intentional act which has no connection with a motor vehicle accident other than that the injured party was operating a motor vehicle prior to his death held insufficient) *with Spisak v. Nationwide Mutual Insurance* 329 Pa.Super. 483, 478 A.2d 891 (1984) (motorist in parked car who died of carbon monoxide poisoning allowed to recover under No–Fault).

■ In the case of *Erie Insurance Exchange v. Eisenhuth*, 305 Pa.Super. 571, 451 A.2d 1024 (1982), this court held that No–Fault Insurance did not cover a passenger of a vehicle who was shot by a police officer in pursuit of that vehicle. There the court reasoned that "the cause of [the] injuries was a gunshot, not his being a passenger in [the] automobile." *Id.* 305 Pa.Super. at 574, 451 A.2d at 1025. This is quite similar factually to the case at bar. Here, Mrs. Roach was injured as a result of two individuals engaging one another in a fight while riding on public

transportation. The fact that Mrs. Roach was on a bus was incidental to her injuries. Her injuries were caused by two men fighting, not the maintenance or use of a motor vehicle. The causal connection need not rise to the level of proximate causation; however, some connection must exist between the motor vehicle and the victim's injuries. This connection must be more than mere happenstance. *See Schweitzer*, 306 Pa.Super. 300, 303, 452 A.2d 735, 737 (1982). We, therefore, fail to find the requisite causal link between the injury and the use of a motor vehicle; hence, we find no requirement of coverage under the Pennsylvania Motor Vehicle Financial Responsibility Law.

■ The Roaches ask us to expand the parameters of the "maintenance and use" concept of the Pennsylvania Motor Vehicle Financial Responsibility Law by including within that concept the internal operating procedures of a public transit authority. The appellants ask that we include in the ambit of the "maintenance and use" concept "the procedures for maintaining the safety of passengers, procedures for maintaining order or discipline on a bus, and procedures for quelling disturbances which occur on a bus." We believe that this was not the intent of the legislature.

The purpose of the No–Fault Act was "to establish at reasonable cost ..., a statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims...." *Cerrato*, 342 Pa.Super. 551, at 554, 493 A.2d 728, at 730 (1985) (emphasis in original), *quoting* Pa.Stat. Ann. tit. 40, § 1009.102(b). At a time which some would call an insurance crisis in the Commonwealth, the Legislature enacted the Pennsylvania Motor Vehicle Financial Responsibility Law. It was enacted as a means of insurance reform and as an attempt to decrease or at least stabilize individual automobile insurance rates across the Commonwealth, Vol. 1 House Journal No. 10, p 166 (1984) (statement of Rep. DeVerter). Additionally, it was intended to insure that the approximately 1.2 million non-insured driv-

ers in the Commonwealth would be provided with insurance. Vol. 1 Senate Journal No. 4, p 1583 (1984) (statements by Sen. Rhoades). If we were to expand the applicability of the "maintenance and use" concept, as the appellants suggest, we believe the result would be both inconsistent with and contrary to the intended goals of the Legislature. The implications of such a pronouncement would have a far-reaching and profound effect upon this Commonwealth.

The mere fact that the bus is the site where the injuries were sustained does not establish the requisite causal connection between the "maintenance and use of a motor vehicle" and the injuries. Accordingly, we hold that a bus passenger who is injured as a result of a fight between two other passengers is not entitled to insurance coverage under the provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law.

In the case at bar, the trial judge granted State Farm's preliminary objection in the nature of a demurrer stating there was "no allegation that the injuries were caused by the use or maintenance of the vehicle under the facts as alleged[.] Mrs. Roach is not within the parameters of protection set forth in the legislation and the contract of insurance." (Trial Court Opinion at 2). Thus, we find that, accepting as true the facts properly pleaded by Mr. and Mrs. Roach, there were insufficient facts, even if ultimately proven, to permit recovery. Accordingly, the trial court properly granted State Farm's preliminary objection in the nature of a demurrer.

■ Since the trial court properly sustained the preliminary objection, and the initial pleadings reveal that the defects of the complaint are so substantial that they are not likely to be cured by amendment, and that the *prima facie* elements of the claim cannot be established, we find that the leave to amend was properly withheld.

The Order of the trial court is affirmed.